IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LESTER MOODY,

*Plaintiff*,

v.

BALTIMORE CITY DEPARTMENT OF
SOCIAL SERVICES STATE OF
MARYLAND,

*Defendant*.

Civil Action No. ELH-18-488

**MEMORANDUM**

In this employment discrimination litigation, the self-represented plaintiff, Lester Moody, has filed his second suit against his former employer, the Baltimore City Department of Social Services ("BCDSS"), alleging a claim "based solely on a theory of retaliation." ECF 1 at 3. Prior to initiating this case, Moody had filed suit against BCDSS on November 14, 2016. *See Moody v. Baltimore City Dep't of Social Services*, Case JFM-16-3706 ("Case I"). It was assigned to Judge J. Frederick Motz. I shall sometimes refer to the current case as "Case II."

Suit is founded on Title VII of the Civil Rights Act of 1964 ("Title VII"), codified, as amended, at 42 U.S.C. §§ 2000e *et seq.*; Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. §§ 1681 *et seq.*; and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2014 Repl. Vol., 2017 Supp.), § 20-606 of the State Government Article ("S.G."). *See* ECF 1 at 1, 2 ("Complaint"). Moody asserts, *inter alia*, that he "was forced out of employment as a Case Manager for filing a lawsuit against the State of Maryland," because of unlawful unemployment practices. ECF 1 at 3. Moreover, he contends that, due to "intolerable" working conditions, he was "forced" to resign on June 15, 2016, "for medical reasons." *Id.* In Moody's view, the conduct at issue amounted to a constructive discharge. *Id.*

BCDSS has moved to dismiss (ECF 10), supported by a memorandum of law (ECF 10-1) (collectively, the "Motion"), and several exhibits. *See* ECF 10-2 through ECF 10-5. The exhibits include filings from Case I. Moody opposes the Motion. ECF 12 ("Opposition"). BCDSS has not filed a reply, and the time to do so has expired. *See* Local Rule 105.2.a.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual and Procedural Background[1]

Moody worked for BCDSS as a Case Manager from May 2012 until he "was forced" to resign in June 2016. ECF 1 at 6. According to Moody, while employed by BCDSS, he filed a "lawsuit against the State of Maryland." *Id.* at 3, 6.[2] And, he claims that filing that suit created a hostile work environment for him at the BCDSS. *Id.* at 6. Moody also states that the "hostile work environment" was created because of "[Moody's] gender", and he further alludes to racial discrimination. *See id.* at 7. Yet, Moody does not specify his race and he did not assert a gender or race discrimination claim.

In addition, Moody claims to have "submit[ted] a complaint for retaliation to the Human Resources Department, employee relations agent, Karen Drew." *Id.* at 2. However, Moody does not state the date on which he filed that "complaint," nor does he provide the Court with an explanation as to the nature of the "complaint."[3] It is not clear if the "lawsuit against the State of

---

[1] As explained, *infra*, at this juncture, I must accept as true the facts alleged by Moody.

[2] The unidentified suit was allegedly filed when Moody was an employee of the BCDSS. Therefore, that suit cannot be Case I, because Case I was filed when Moody was no longer an employee of BCDSS. *See* ECF 1; Case I, ECF 3.

[3] In Moody's Opposition, he states that the "human resources department was made aware of the retaliatory conduct by [Moody's] supervisor", and he refers to "EXHIBIT A." ECF 12 at 4. However, Moody did not attach "EXHIBIT A" to his Opposition. He appears to refer to ECF 10-2, which is a copy of the Amended Complaint in Case I. *See id.*, ECF 3.

Maryland" is the same as the "complaint" that Moody filed with the BCDSS Human Resources Department. However, Moody refers to these matters interchangeably.

Moody asserts that, "immediately after" he filed the lawsuit against the State, he began receiving "write-ups" from his immediate supervisor, Shirley Brickus. *Id.* at 6. Moody does not specify the content of the "write-ups." According to Moody, BCDSS and Brickus took part in "efforts to sabotage" his advancement at the BCDSS Northeast Regional Office ("NERO"), *id.* at 2, and subjected him to a "campaign of threats and intimidation." *Id.* at 9.

In particular, Moody states that Brickus took "actions" that "prevented, and hindered and reduced Plaintiff's professional standing, and upward mobility at NERO," *id.* at 7, and interfered with Moody's efforts "to obtain future employment elsewhere with another State agency." *Id.* at 9. However, Moody does not describe the "actions" he claims were taken against him.

Further, Moody maintains that the conduct caused him to experience "extreme distress, along with a medical condition." *Id.* at 7. Additionally, Moody alleges that he "was always rated 'satisfactory' in his PEP evaluations, up until his medical condition interfered in his health." *Id.* at 6. However, Moody does not identify the nature of his "medical condition" or specify when it was diagnosed.

Plaintiff alleges that, on an unspecified date, "he assumed that management found out about [his] private, personal business." *Id.* The "personal business" is not specified. But, Moody avers that he was approved "by personnel management" for "Family Medical Leave Act" from June 9, 2016, through July 21, 2016. *Id.*

According to Moody, the "hostile and offensive" workplace created by Brickus and "management" was "severe and pervasive," and "interfered" with his "ability to perform his job duties" and caused his unspecified medical condition. *Id.* at 7. Moreover, Moody claims that he

did not resign voluntarily in June 2016 from his position at BCDSS. ECF 1 at 7. Rather, he claims that he was forced to resign because of "the seriously hostile retaliatory work environment that had been created and nurtured by [Brickus] and NERO management," in which he received "retaliatory comments [that] were political to the point of intimidating." *Id.* at 6; *see also id.* at 3. In his view, he was the victim of a constructive discharge. *Id.* at 3.

After plaintiff resigned from his position as Case Manager, he "applied for unemployment insurance benefits with the Division of Unemployment Insurance in the State of Maryland." *Id.* at 2. And, on or about October 31, 2016, Moody filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was "assigned Charge Number 531-2017-00123." *See* ECF 1 at 4.

On November 14, 2016, Moody filed his first suit in this Court against BCDSS, related to the allegations set forth above. Case I, ECF 1. He filed an Amended Complaint in that case on November 21, 2016. *Id.*, ECF 3; *see also* Case II, ECF 10-2 (copy of the Amended Complaint filed in Case I). Like the Complaint in this case, the Amended Complaint in Case I set forth three counts of unlawful retaliation by BCDSS, pursuant to Title VII, Title IX, and MFEPA, respectively. Case I, ECF 3 at 8-11. The factual claims in both cases are also identical. Among other things, Moody alleged in Case I that he filed a charge of discrimination, "assigned Charge No. 531-2017-00132." *Id.*, ECF 3 at 4. In addition, he claimed that "he was forced out of employment" with the BCDSS because of "unlawful employment practices." *Id.* at 9.

On January 5, 2017, in Case I, BCDSS moved to dismiss or, in the alternative, for summary judgment. *See* JFM-16-3706, ECF 9. It was supported by a memorandum of law and exhibits. *See id.*, ECF 9-1. BCDSS argued that Moody had failed to exhaust his Title VII and MFEPA claims. *Id.* at 6. Rosemarie Rhodes, Director of the EEOC's Baltimore Field Office,

averred in an Affidavit that although Moody "spoke to an EEOC investigator . . . no Charge of Discrimination resulted from that inquiry." *Id.*, ECF 9-2 at 1. Further, Rhodes stated that the "Charge Number" that Moody alleged was assigned was, instead, an "inquiry number," and that "the EEOC [had] not issued a Notice of Right to Sue Letter to Mr. Moody." *Id.*[4]

In the alternative, BCDSS argued that the Amended Complaint in Case I failed to allege facts sufficient to state a claim under Title VII, Title IX, and MFEPA. *Id.*, ECF 9-1 at 7. For example, BCDSS argued that even if Moody engaged in protected activity, and even if Moody's employer took adverse action against him, he failed to allege that the two were causally connected. *Id.*

In a Memorandum (JFM-16-3706, ECF 14) and Order (*id.*, ECF 15) issued on February 14, 2017 in Case I, Judge J. Frederick Motz granted summary judgment in favor of BCDSS, on the ground that Moody did not file a charge of discrimination and never received a right to sue letter. In other words, Moody failed to exhaust his administrative remedies.

On March 10, 2017, Moody filed a Notice of Appeal to the Fourth Circuit as to Case I. *Id.*, ECF 16. The Fourth Circuit affirmed the decision of the district court on June 26, 2017, in a per curiam opinion. Case I, ECF 19; *see* Case II, ECF 10-3 (copy of Judgment). Notably, the Fourth Circuit found no reversible error as to Judge Motz's dismissal of the Title VII, Title IX, and MFEPA claims. Case I, ECF 19 at 3. On July 6, 2017, Moody filed a petition for rehearing. *Id.*, ECF 20. Therefore, the Fourth Circuit stayed the issuance of the mandate. Case I, ECF 20; Case II, ECF 10-4. However, the Fourth Circuit denied the petition on July 25, 2017. Case I, ECF 21; Case II, ECF 10-5. As a result, the mandate issued on August 2, 2017. Case I, ECF 22.

---

[4] BCDSS also submitted the Affidavit of Cleveland Horton, II, the Deputy Director of the Maryland Commission on Civil Rights (the "Commission"). Horton averred that the Commission did not receive an "administrative charge" from Moody. Case I, ECF 9-3 at 2.

Moody did not seek review in the United States Supreme Court. *See* Docket, Case I.

On February 16, 2018, Moody filed suit in this case. As indicated, the Complaint in Case I (ECF 1) is virtually identical to the Amended Complaint filed in Case I. Compare Case I, ECF 3 to Case II, ECF 1.[5] To illustrate, the Complaint in Case II reiterates the same facts that were previously alleged in the Amended Complaint in Case I. Moreover, like Case I, the Complaint in Case II alleges the same causes of action under Title VII, Title IX, and MFEPA. And, both cases cite to the same Charge of Discrimination, *i.e.*, No. 531-2017-00123.

## II. Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The

---

[5] There are only a few minor, insignificant differences between the two complaints. For example, one is styled an "Amended Complaint" and the other is styled a "Complaint." Additionally, the date "November 18, 2016" was removed from the signature page of the Amended Complaint in Case I, and replaced with "February 14, 2018" for the Complaint in Case II. And, Moody replaced the words "amended instant action" in the Amended Complaint in Case I with "instant action" in the 2018 Complaint. In all other respects, the two complaints are identical.

purpose of the rule is to provide the defendants with "fair notice" of the claims against them and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." ) (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d

564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not

expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, under limited circumstances, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citations omitted). But, such documents must be integral to the complaint and authentic. *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *see Six v. Generations Federal Credit Union*, ___ F.3d ___, 2018 WL 2435430, at *2 (4th Cir. May 31, 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). To be "integral" a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting

allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." And, courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment. *See, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment."). Of import here, a court may also take judicial notice of its own records. *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990).

### IV. Discussion

#### A.

In its Motion, BCDSS asserts that Moody's Title VII, Title IX, and MFEPA claims are barred by the doctrine of res judicata. *See* ECF 10 at 4-5. This is an affirmative defense and, as

set forth earlier, a court ordinarily may not grant a Rule 12(b)(6) motion on the basis of an affirmative defense, unless the facts are clear from the face of the complaint.

However, the Fourth Circuit "has previously upheld the assertion of res judicata in a motion to dismiss." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation omitted). In *Andrews*, the Court said, *id.*: "[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact[.]". On this basis, I will consider the res judicata defense.

Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). The doctrine precludes parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Montana*, 440 U.S. at 153-54.

The doctrine of res judicata was "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Laurel Sand & Gravel*, 519 F.3d at 161-62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)); *see also deLeon v. Slear*, 328 Md. 569, 580, 616 A.2d 380, 385 (1992). Res judicata also extends to claims that could have been asserted and litigated in the original suit. *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013); *see also FWB Bank v. Richman*, 354 Md. 472, 493, 731 A.2d 916, 927 (1999).

The doctrine of res judicata applies when the following three elements are present: "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits." *Clodfelter*, 720 F.3d at 210 (citation and quotation marks omitted); *see Weiner v. Fort*, 197 F. App'x 261, 264 (4th Cir. 2006); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) ("[C]laim preclusion occurs when three conditions are satisfied: 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding."); *Young–Henderson v. Spartanberg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991); *see also Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140, 43 A.3d 999, 1002 (2012) ("(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation."); *accord Powell v. Breslin*, 430 Md. 52, 63-64, 59 A.3d 531, 538 (2013).

For the purpose of res judicata, privity exists between parties when they are "so identified in interest . . . that [they] represent the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005). Moreover, "[p]rivity exists where a plaintiff attempts to relitigate the same claim by naming different governmental entities and employees as defendants." *Kayzakian v. Buck*, 865 F.2d 1258 (Table), at *2 (4th Cir. 1988) (per curiam) (citing *Mears v. Town of Oxford, Md.*, 762 F.2d 368, 371 n.3 (4th Cir. 1985)).

A cause of action is "identical" for purposes of res judicata if it "involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir. 1986); *see Clodfelter*, 720 F.3d at 210 ("[W]e follow the 'transactional' approach when considering whether causes of action are identical: 'As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect.'") (citation omitted); *In re Varat Enterprises, Inc.*, 81 F.3d at 1316. Notably, "[u]nder this transactional approach, res judicata will bar a 'newly articulated claim[ ]' if it is based on the same underlying transaction and could have been brought in the earlier action." *Clodfelter*, 720 F.3d at 210 (citing *Laurel Sand & Gravel, Inc.*, 519 F.3d at 162).

**B.**

The elements of res judicata have plainly been met here.

First, there was a final judgment on the merits as to Case I. Moody lodged that suit against BCDSS, alleging discrimination in violation of Title VII, Title IX, and MFEPA, based on precisely the same allegations that he advances here.

Notably, Moody filed Case I in November 2016, several months after he left his employment at BCDSS. Therefore, the underlying facts were known to Moody when Case I was filed.

Judge Motz awarded summary judgment to BCDSS, because Moody did not exhaust his administrative remedies. Moody appealed to the Fourth Circuit, which affirmed Judge Motz's ruling. Moody did not seek review from the Supreme Court. Therefore, there is a final judgment in Case I as to the claims lodged against BCDSS.

And, in both Case I and this case, Moody alleged "unlawful retaliation," hostile work environment, and wrongful termination, in violation of Title VII, Title IX, and MFEPA, based on the same underlying facts. Both cases arose from events occurring during the time period when Moody was an employee of BCDSS. *See* Case I, ECF 3 at 6; Case II, ECF 1 at 6. In both suits, Moody alleged that he was subjected to "retaliatory conduct" by Brickus and unidentified NERO management after he filed a complaint with the BCDSS Human Resources Department. *See* Case I, ECF 3 at 8; Case II, ECF 1 at 8. Both suits averred that Moody became "extreme[ly] distress[ed]" and developed a medical condition because of the hostile work environment at BCDSS. *See* Case I, ECF 3 at 7; Case II, ECF 1 at 7. Moody argued in both suits that, in addition to the "hostile" work environment, he was forced to resign from his position with BCDSS. *See* Case I, ECF 3 at 6; Case II, ECF 1 at 6. Indeed, the Complaint in Case II is a near verbatim copy of the Amended Complaint in Case I. Clearly, both arose "out of the same . . . series of connected transactions." *See Harnett*, 800 F.2d at 1314.

Further, the parties in both of Moody's suits are identical. Moody was the sole plaintiff in Case I. And, Moody is again the sole plaintiff here. ECF 1. Moreover, BCDSS was the sole defendant in both suits. Clearly, privity has been established.

Finally, the Court notes that plaintiff alleges in Case II that he filed a Charge of Discrimination with the EEOC on October 31, 2016, assigned Charge Number 531-2017-00132. ECF 1 at 2. That is the precise allegation that plaintiff made in Case I. *See* ECF 3 at 2. Case I was dismissed for failure to exhaust. There is no allegation here that the defect has been cured.

## V. Conclusion

For the reasons set forth above, I shall grant the Motion (ECF 10) to dismiss this case. An Order follows, consistent with this Memorandum.


Date: June 25, 2018                                              /s/
                                                    Ellen Lipton Hollander
                                                    United States District Judge